FILED
2013 Aug-19 AM 11:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DWAYNE K. ROEBUCK,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Civil Action No.: 5:12-CV-02024-RDP |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner of** } | |
| **Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Dwayne K. Roebuck brings this action pursuant to Title II of Section 205(g) and Title XVI of Section 1631(c)(3) of the Social Security Act (the Act), seeking review of the decision of the Administrative Law Judge (ALJ), denying his claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). *See also* 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and briefs submitted by the parties, the court finds that the decision of the ALJ is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed for DIB and SSI on October 15, 2009, and the SSA denied Plaintiff's applications upon initial review. (Tr. 71, 129-35, 136-39). Plaintiff then requested (Tr. 94) and received a hearing before Administrative Law Judge Cynthia G. Weaver (ALJ) on February 23, 2011. (Tr. 37-60). In her decision, dated April 20, 2011, the ALJ determined that Plaintiff has not been disabled under Section 1614(a)(3)(A) of the Act since October 15, 2009, the date when Plaintiff filed his applications. (Tr. 19). After the Appeals Council denied Plaintiff's request for

review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review.

At the time of the hearing before the ALJ, Plaintiff was forty-seven years old and had an eleventh grade education. (Tr. 343, 347, 40, 155). He had previously claimed January 30, 2009 as the onset date for his current disability and now claims an amended disability onset date of October 30, 2009. (Tr. 40, 155). In discussing his lack of income with the ALJ, Plaintiff told her that he had spent many of the years leading up to this hearing incarcerated.[1] (Tr. 46). Plaintiff alleges dizziness, swelling[2], chest pain, overactive bladder, memory problems[3], and chronic fatigue as conditions preventing him from performing his past relevant work. (Tr. 42, 44, 46, 47, 49, 50).

With regard to his domestic life, Plaintiff reported to the ALJ that he smokes a pack of cigarettes per day, does not have a driver's license, "[puts] [his] feet up" almost all day, watches TV, naps, lets the dogs out[4], and walks from ten to fifteen minutes on some days. (Tr. 42, 44, 47-48). Nonetheless, Plaintiff reported that he has lost "a lot of weight" by eating healthier foods, can bathe and dress himself, clean his camper, and sometimes visits congregation members with the deacon of his church. (Tr. 49, 167, 203).[5]

Plaintiff has performed past relevant work as a carpenter, cabinet-maker and installer, and pressure-washer. (Tr. 179-80). He served in supervisory roles, spent most of the workday

---

[1] Plaintiff served time for not paying child support, traffic offenses, armed robbery, writing bad checks, and forgery. (Tr. 41, 46, 343).

[2] Plaintiff reported during the February 23, 2011 hearing before ALJ Weaver that he has to elevate his feet every day, sometimes for only around 20 minutes, and other times, up to "two days at a time or even more." (Tr. 49).

[3] Plaintiff reported to ALJ Weaver that he has short term memory problems and believes they are a consequence of being placed under anesthesia a few years prior for his heart surgery. (Tr. 50).

[4] Plaintiff indicated that while the dogs are out, he sits outside and "doze[s] in the sun because the sun feels good." (Tr. 47).

[5] Plaintiff reported that his illnesses, injuries, and conditions have had "no effects" on his ability to care for his personal needs, and he has had no changes in his daily activities since he last completed a disability report. (Tr. 214).

physically active and on his feet, and frequently engaged in heavy lifting. (Tr. 181). Plaintiff's work activities included constructing tin roofs, painting homes, performing carpentry and concrete work, and building cabinets. (Tr. 170). Plaintiff claims that he stopped working because of both a heart attack (and the subsequent insertion of a pacemaker and defibrillator) and ADHD; he alleges he experiences extreme fatigue, dizziness, chest pain, shortness of breath, and problems with concentration. (Tr. 42, 44, 46, 50, 170, 188-89, 191). Specifically, Plaintiff reports that he experiences dizziness when he climbs ladders and fears falling and cannot pick up objects such as plywood, as it "hurts [his] chest where [the] pacemaker is." (Tr. 170).

During his alleged period of disability, Plaintiff has been seen by family medicine practitioners, such as Dr. Faye Wilson, Dr. Marlin Gill, and Dr. Delsadie Collins, cardiologist Dr. Faith Ali, and psychologist Dr. John Haney. (Tr. 225-29, 240, 338, 344, 346, 363). Plaintiff's primary care physician is Dr. Wilson, who has treated Plaintiff for an infection resulting from a tick bite[6] and heartburn. (Tr. 338). Plaintiff saw Dr. Gill for a disability examination; Dr. Gill described Plaintiff as "alert and oriented," overweight, displaying normal breathing and a regular pulse (with "no murmur, gallop, or rub"), and demonstrating a normal gait. (Tr. 346-47).

Dr. Collins performed a physical summary and physical residual functional capacity (RFC) report on Plaintiff and reported the following: "[Plaintiff's] statements about [his] symptoms and functional limitations are considered only partially credible[,] as the severity alleged is inconsistent with the objective findings from the evidence in the file. The MER in the file does not support the level of severity of [Plaintiff's alleged] symptoms." (Tr. 350). Moreover, Dr. Collins reported that Plaintiff has no medically-determinable impairment of ADHD and is not currently being treated for depression. (Tr. 363). Lastly, Dr. Collins stated that

---

[6] Plaintiff was tested for Lyme disease but the result was negative. (Tr. 232-34).

3

Plaintiff would "benefit from accommodations in the workplace but evidence does not support a listing level impairment."[7] (*Id.*).

Plaintiff was also seen by Dr. Ali, a cardiologist who reported that Plaintiff had done well[8] after his pacemaker was inserted. (Tr. 240). As listed on an undated Medical Report (Tr. 190), Plaintiff takes aspirin, Azithromycin, Carvedilol, Famotidine, Furosemide, Isosorbide dinitrate, Lisinopril, and Ranitidine hydrochloride. (Tr. 195). Plaintiff reported no medical tests for illness, injuries, or conditions. (Tr. 196).

With the exception of Dr. Haney[9], a consultative psychologist hired by the SSA, physicians have not indicated that Plaintiff significantly lacks ability to learn, remember, pay attention[10], or attend to his personal needs[11]. (Tr. 227, 240, 312). Dr. Haney reported that Plaintiff's "ability to function in most jobs appeared moderately to severely impaired due to physical and emotional limitations"[12] and diagnosed Plaintiff with depressive disorder, alcohol abuse (in remission), and a learning disorder. (Tr. 344). Amy Cooper, a psychologist who performed Plaintiff's mental RFC, found that Plaintiff was "not significantly limited" or only "moderately limited" in all categories analyzed. (Tr. 373-74).

Toward the end of Plaintiff's hearing, the ALJ posed a hypothetical question to Vocational Expert (VE) Melissa Neel. (Tr. 54). The ALJ asked if a person with the same education, training, and work experience, limited to light work, could perform Plaintiff's past

---

[7] Of course, it was for the ALJ, not a medical practitioner, to make this ultimate conclusion.

[8] Dr. Ali reported that Plaintiff's heart was "normal," his lungs were "clear," his chest and leg incisions were "healed," and that Plaintiff's overall condition was "good." Dr. Ali also cleared Plaintiff to drive and said there was no need for a follow-up appointment. (Tr. 240).

[9] Dr. Haney reported the following: "[Plaintiff] was unable to subtract serial sevens but was able to count forward by threes. He also had difficulty with other simple problems in change making and arithmetic. He was able to find similarities between paired objects and interpret simple proverbs…He recalled zero of three objects after five minutes…Intelligence was estimated at the low average range." (Tr. 343, Exhibit No. B6F).

[10] Treating physician noted that Plaintiff had normal alertness and memory. (Tr. 227, Exhibit No. B1F, Lawrence Medical Center).

[11] "The patient has adequate support systems available, is able to ambulate independently, and can perform all activities of daily living without assistance." (Tr. 312, Exhibit No. B4F, Parkway Medical Center).

[12] Again, it is for the ALJ, not a medical practitioner, to make this ultimate conclusion.

relevant work, and the VE stated he could not. (Tr. 54-55). The VE suggested the jobs of clerk, cashier, and inspector, all of which are available in significant numbers in both the state and national economies. (Tr. 31-32, 55). The ALJ then posed a second hypothetical question, this time including the same qualities of the individual in the first hypothetical, but adding that this second individual can understand and carry out simple instructions but carry on only casual social interaction in the work environment. (Tr. 56). In response, the VE stated that such an individual could not perform Plaintiff's past relevant work or many cashier or clerk positions (because of the need for more than only casual social interaction), but could still perform the tasks required of an inspector. (Tr. 57). Finally, the ALJ posed a third hypothetical, adding to the previous descriptions that this individual would "be expected to miss one to two days of work each month due to physical or mental issues." (Tr. 58). The VE replied that the three jobs previously suggested would likely be available if only one work day per month was missed but not if two days were missed. (*Id.*).

Based on the VE's testimony, Plaintiff's testimony, and the entirety of the record, the ALJ found that there exists a significant quantity of jobs in the national economy that Plaintiff could perform, in conformance with the Medical-Vocational Guidelines provided at 20 C.F.R. § 404, Subpart P, Appendix 2 and that, therefore, Plaintiff is not disabled. (Tr. 32).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant

engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and has a combination of severe impairments of history of myocardial infarction status post 4-vessel coronary artery bypass grafting, coronary artery disease, status post implantable cardioverter-defibrillator placement, fatigue (of unclear etiology), depressive disorder, learning disorder, and alcohol abuse (in remission) that satisfies the second prong of the analysis, as set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 21-22). The ALJ also found obesity to be a non-severe impairment and ADHD to be a non-medically-determinable impairment. (*Id.*). With regard to the third prong, however, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 and discussed Plaintiff's impairments. (Tr. 22-23).

The ALJ found that all of these impairments, individually or in combination, are insufficient to qualify Plaintiff for disability. (Tr. 22-23). First, Plaintiff's coronary problems have "significantly improved" as a result of surgical treatment in 2007. (Tr. 22). Second, there is no evidence of congestive heart failure or pacemaker complications. (*Id.*). Third, Plaintiff's mental impairments have not resulted in "more than moderate" limitations and have not involved "repeated episodes of decompensation." (*Id.*). Finally, Plaintiff's depressive and learning disorders have resulted in "no more than a mild restriction of daily living activities, mild [social difficulties], and moderate [concentration difficulties]." (*Id.*).

In the final steps of the analysis, the ALJ found that Plaintiff is unable to perform his past relevant work as a cleaner, cabinet maker, delivery truck driver, and a machine paint mixer. (Tr. 30-31). However, based on the three hypothetical questions posed to VE Michelle Neel, the ALJ determined that, taking into account Plaintiff's age, education, work experience, and RFC,

Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and found Plaintiff "not disabled." (Tr. 31-32).

### III. Plaintiff's Arguments for Reversal

Plaintiff presents two arguments: (1) the ALJ erroneously rejected the opinion of the Social Security Administration's own consultative psychologist by giving that opinion no weight, and (2) the ALJ failed to develop the record by not requesting a "new or more detailed report" to resolve any conflicts or ambiguities in the consultative psychologist's findings. (Pl.'s Mem. 9, 12).

### IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings

must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the ALJ applied proper legal standards in reaching that decision. The court addresses each of Plaintiff's arguments below.

### A.     The ALJ Did Not Err in Giving No Weight to the Opinion of the Consultative Psychologist.

Dr. Haney, the SSA's consultative psychologist, diagnosed Plaintiff with a depressive disorder, alcohol abuse (in remission), and a learning disorder. (Tr. 344, Exhibit No. B6F). Plaintiff contends that the ALJ's failure to give weight to Dr. Haney's opinion constitutes reversible error. (Pl.'s Mem. 9-10). Specifically, Plaintiff alleges the ALJ "selectively adopt[ed] and reject[ed] portions of the CE opinion." (Pl.'s Mem. 10). The Commissioner counters that Dr. Haney's opinion did not merit weight because Dr. Haney "clearly" based his opinion on Plaintiff's physical limitations and that, as a psychologist, Dr. Haney is not qualified to assess physical conditions. (Tr. 30, 344, Comm'r Mem. 8); *see also* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii). The ALJ noted that Dr. Haney did not rely upon any specific clinical or diagnostic evidence in determining that Plaintiff's "physical and emotional limitations moderately to severely impair his ability to function in most jobs." (Tr. 30). Toward the end of his discussion of Plaintiff's RFC, the ALJ remarked that other physicians who have treated Plaintiff have not indicated disability and that, "in light of his medical treatment history," Plaintiff's testimony was "not fully credible." (*Id.*). Consistent with the responsibilities set forth

9

by 20 C.F.R. § 416.927(c)(3),[13] the ALJ properly considered the supportability of Dr. Haney's opinion in his report. (Tr. 30). As such, the ALJ's findings are supported by substantial evidence in reaching his decision.

### B.     The ALJ Did Not Err by Not Further Developing the Record.

Plaintiff's second argument is that the ALJ failed to adequately develop the record by not "requesting a new or more detailed report or [telephoning]" Dr. Haney. (Pl.'s Mem. 12). As the Commissioner notes, the Eleventh Circuit has held that "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated." (Comm'r Mem. 13); *see Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997). Plaintiff's argument misunderstands the ALJ's actions here.  The RFC report readily demonstrates that the ALJ did not need clarification with regard to Dr. Haney's report. (*See* Comm'r Mem. 13-14). The ALJ specifically listed four reasons for affording no weight to Dr. Haney's opinion: (1) as a psychologist, Dr. Haney was not qualified to assess Plaintiff's physical state; (2) there is no evidence that Dr. Haney performed a physical examination or reviewed reports of physicians who had previously treated Plaintiff; (3) Dr. Haney cited no specific "clinical or diagnostic evidence" that went into his ultimate opinion; and (4) the Commissioner, not Dr. Haney, is the party responsible for determining whether Plaintiff is impaired for "most jobs." (Tr. 30). Plaintiff was not prejudiced by the ALJ's decision not to follow up with Dr. Haney for further information. Moreover, if Dr. Haney had been asked to provide more information, his lack of an

---

[13] Section 416.927(c)(3) provides as follows: "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources." *Id*.

authoritative basis to assess Plaintiff's physical conditions indicates that any such additional information would be merely cumulative and not helpful, and in any event would not change the outcome of Plaintiff's case.[14]

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that proper legal standards were applied in reaching this determination. The ALJ's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** on August 16, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[14] *See* 20 C.F.R. § 416.920b(c)(1) ("[An ALJ] may choose not to seek additional evidence or clarification from a medical source if [she] know[s] from experience that the source either cannot or will not provide the necessary evidence.")